IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

        Plaintiff,

   vs.                          **Case No. 07-40066-01-RDR**

PASTOR GOMEZ-ISAGUIRRES,

        Defendant.

_____

## MEMORANDUM AND ORDER

Defendant is charged with illegal reentry into the United States and with illegal possession of a firearm.  Defendant has filed a motion to suppress physical evidence taken from defendant and statements made by defendant to government agents when defendant was stopped, searched and arrested on May 8, 2007.  The court has conducted an evidentiary hearing on this matter and is prepared to rule.

Facts

Topeka Police Officers Whitehead and Erwin were working as part of an assignment to suppress gang activity around 5:45 p.m. on May 8, 2007.  They were patrolling in a neighborhood of Topeka, Kansas where there had been shootings and violence and where there had been a large number of complaints regarding drug and gang activity.  The officers were attempting to make contact with gang members and other persons in the community to develop information and discourage criminality.  One way of making contact was applying

a "zero tolerance" policy to law violations.  In this case, that meant stopping defendant, who was riding a bicycle, because the bicycle did not have the required registration sticker.  Section 142-676 of the Topeka City Code states:  "It shall be unlawful for any person residing in the city to ride or use a bicycle without first obtaining a license therefor as prescribed in section 142-677."  The license is issued by the fire department.  § 142-677. It is supposed to be attached as near to the top of the seat tube as possible facing the front wheel.  § 142-678.  The fire department is responsible for attaching the license to the bicycle. § 142-678.

Officers Erwin and Whitehead were in a patrol car traveling east at a slow rate of speed when they saw defendant riding a bicycle on a sidewalk traveling west.  They did not see a license on the bicycle and decided to stop defendant.  Defendant was cooperative, although he gave the officers what they later learned to be a false name, "Elias Toro Reyes."

Defendant is a young man, approximately 5'5" tall and weighing about 150 pounds.  He was wearing a black tank top and blue shorts at the time of the stop.  He had several visible tattoos. Defendant told the officers that he did not have any identification documents with him.  Officer Erwin noticed, while he was speaking with defendant, that defendant had a knife in his back pocket. There was a clip on the knife holding it inside the pocket.  The

2

top part of the knife was visible, but the main portion of the knife was inside the pocket.

Officer Erwin had learned in his police academy training that a person with a knife within 20 feet of an officer is dangerous even if the officer is carrying a holstered firearm.  He believed the knife was a possible danger.  He removed it from defendant and, believing that defendant could be carrying additional weapons, patted defendant down.  He felt a gun in defendant's front pocket.  Defendant said it was not loaded.  The gun was confiscated and defendant was handcuffed and arrested.  The pat-down of defendant also produced a metal smoking pipe used for consuming drugs.

According to the arrest report, defendant was arrested for criminal possession of a firearm and possession of drug paraphernalia.  The arrest report also directs that defendant be held for identification.

The knife was approximately three inches long with a blade that was 2 1/2 inches long.  The knife could be opened with one hand by releasing a latch or simply by flicking the knife open.  The knife is legal under Kansas law.

Officer Erwin testified that a bicycle license is white or silverish in color and two to six square inches in size.  He stated that he had previously stopped persons for failing to have a bicycle license, although he had not previously ticketed or arrested anyone for that offense.

According to the briefs of both sides, defendant was interviewed by Topeka Police Officer Salamanca and Immigration and Customs Enforcement (ICE) Agent Joseph Stewart at different times following his arrest.  He made incriminating statements regarding his identity and immigration status during the interviews.

ICE Agent Stewart testified during the hearing upon the instant motion that there was an immigration hold on defendant and that procedures related to his arrest have developed information regarding his immigration status.

Defendant's arguments

Following the hearing in this matter, defendant supplemented his arguments with the claim that there were inadequate grounds for the police to stop defendant for the bicycle license violation. Defendant also contends that there was no justification for searching his person when he was stopped for the bicycle violation, even assuming that the officers spotted the knife in his rear pocket.  Defendant finally contends that everything else obtained from defendant - evidence of his identity, incriminating statements, and evidence of his immigration status - is fruit of the illegal search of defendant's person.

Government's arguments

The government contends that the police officers were justified in stopping defendant and doing the pat-down because they saw a knife in defendant's pocket.  The government also contends

4

that even if the pat-down was illegal, the evidence of defendant's identity and immigration status is not fruit of the illegal search. The government asserts that the evidence of defendant's identity is in the nature of a routine question permitted during a traffic stop or when booking a person.  The government also argues that this evidence is covered by the inevitable discovery doctrine.   In general, the government claims that as long as defendant was not stopped on the hunch that he was an illegal alien and for the purpose of determining his identity, then information obtained after the stop regarding his identity and immigration status cannot be suppressed.

Initial stop

A traffic stop is justified if the detaining officer had an objectively reasonable and articulable suspicion that a traffic violation or other crime occurred.  U.S. v. Cervine, 347 F.3d 865, 869 (10th Cir. 2003).  If a police officer does not see a license or temporary registration which is required to be visibly attached to a vehicle, then the officer may stop the vehicle to enforce the license requirement.  See U.S. v. Edgerton, 438 F.3d 1043, 1046 (10th Cir. 2006) (discussing the enforcement of motor vehicle license plate and temporary registration requirements under K.S.A. 8-133 and 8-126a).  In this case, Officer Erwin was aware of the bicycle license requirement.  He was aware that city ordinances required that the license be displayed near the top of the seat

post facing the front wheel.  He described the general appearance
of a bicycle license.  He was entitled to stop defendant to enforce
the city ordinance when he did not see the license of defendant's
bicycle as defendant was riding it.

Pat-down search

This was a Terry stop.  The law permits officers to do a pat-
down search during a Terry stop if they reasonably believe that a
detainee may be armed and could gain immediate control of a weapon,
in other words, "armed and dangerous."  Terry v. Ohio, 392 U.S. 1,
30 (1968); U.S. v. King, 990 F.2d 1552, 1561 (10th Cir. 1993).

The issue is whether the circumstances in this case support a
reasonable belief that defendant was armed and dangerous.
Plaintiff cites an unpublished Tenth Circuit case, U.S. v. Gorman,
2003 WL 21186231 (10th Cir. 2003).  In Gorman, a car was stopped
early in the morning for a broken taillight and expired
registration.  It was stopped in an area where there had been
several automobile burglaries.  The police officer conducting the
stop thought he saw some wires protruding from under the driver's
seat that appeared to be attached to some stereo equipment.  The
police officer asked the driver to exit the car and obtained
consent to search the vehicle.  The defendant, Mr. Gorman, was a
passenger in the car.  He refused to comply with a request to exit
the car, insisting that he had a right to remain in the vehicle.
Three other officers arrived to assist in conducting the traffic

stop.  When asked if he had any weapons, Gorman produced a small pocket knife to the officers while he was still seated in the vehicle.  Eventually, the officers opened the passenger door to the vehicle and Gorman voluntarily started to exit the car.  He was ordered to stand on the sidewalk with his hands on his head so he could be searched for weapons.  Gorman made a furtive movement with his hands toward his waistband as he was getting out of the car. The officers then pinned Gorman against a nearby wall and reached to the front of Gorman's waistband and retrieved an unloaded handgun.  The majority on the panel (with one member dissenting) held that the officers had insufficient grounds to think that Mr. Gorman might be armed and dangerous.  The majority emphasized that the officers observed no bulge in Mr. Gorman's clothing that could have indicated the presence of a weapon, had no reasonable belief that he was engaged in any criminal activity, and had no reason to believe, other than the movement to his waistband, that he could have been armed and dangerous.  Therefore, the court held that the protective search was improper under the circumstances.

The court believes the key factual distinction between Gorman and the case at bar is that in Gorman there was no observation of a bulge or any other visible indication (other than the motion to the waistband) that Mr. Gorman was carrying a weapon at the time he was frisked.  In Pennsylvania v. Mimms, 434 U.S. 106 (1977), a vehicle was stopped for having an expired license plate.  The

driver was asked to step out of the car and, when he did so, the officer noticed a large bulge under the driver's sports jacket. Fearing that the bulge was a weapon, the officer frisked the driver and discovered a loaded revolver.  The Court held that once the officer saw the bulge in the jacket, he was justified in doing the pat-down of the driver.  434 U.S. at 112.

In the case at bar, the weapon was more clearly delineated to the police officers.  They saw what appeared to be a knife in defendant's back pocket.  Thus, they had reasonable grounds to believe that defendant may be "armed and dangerous" and reasonable grounds to conduct a pat-down of defendant.

In a somewhat similar case, U.S. v. Malouff, 2004 WL 2581075 (10th Cir. 2004), the court approved a pat-down of a defendant who was stopped for failing to signal a lane change.  The defendant told the officers that he had a knife in his pocket and started to reach for it.  At that point, the officers restrained him and reached into the pocket.  They retrieved cash and a knife and looked in the defendant's other pockets and found drug paraphernalia.  The Tenth Circuit held that the statement concerning the knife, coupled with the reach to the pocket, justified the officers' decision to search the pocket for the knife and to search the other pockets.  Obviously, defendant in the case at bar did not reach for his knife as did the defendant in Malouff. We do not believe that is an essential fact.  In our view, the case

law does not require a suspect to reach for a weapon before he may be considered "armed and dangerous."

In U.S. v. Valenzuela, 2007 WL 1068110 (10th Cir. 2007), four officers investigating a burglary-in-progress call found the defendant scrunched down in a fetal position under the steering wheel of a car. They also saw a rifle in plain view in the back seat of the car. The officers drew their weapons, ordered defendant out of the car, had him lie down on the street at gunpoint and handcuffed him. Then they secured the rifle. The defendant argued that it was unreasonable to order defendant out of the car at gunpoint and handcuff him. The Tenth Circuit held that the officers acted reasonably in concern for their safety even though the rifle was in the back seat and defendant made no movement towards it. The Tenth Circuit stated: "The officers acted reasonably in drawing their weapons, ordering Defendant to lie down on the street, and handcuffing him until the rifle could be secured and Defendant could be patted down to ensure he did not possess another weapon." Id. at *4.

In U.S. v. Yamba, 407 F.Supp.2d 703 (W.D.Pa. 2006), a police officer investigated a parked U-Haul truck that was partially blocking an entrance to a gas station. As he approached the truck, he saw three people inside. One of the persons, the driver, was holding an open pocket knife. The other two made quick and furtive movements. The officer received the driver's name and learned from

the dispatcher that he had an outstanding warrant. Ultimately, this turned out to be mistaken information. But, on the basis of the warrant, he handcuffed the driver and placed him in the police car. The officer had obtained consent to search the truck. Before doing so, he asked the two passengers to step out of the truck and gave them a pat-down search. This led to the discovery of drugs in one of the passenger's pockets and criminal charges against that passenger. The court denied the passenger's motion to suppress and found that the protective search was justified in part on the basis of the driver holding a knife.

In U.S. v. Mattarolo, 209 F.3d 1153 (9th Cir.) cert. denied, 531 U.S. 888 (2000), there was a vehicle stop around midnight on a secluded road near a construction site. The driver exited the car and walked swiftly back to the patrol car. The officer received permission to frisk the driver for guns. He did not feel a gun, but he did notice an object which he thought might be a small pocket knife. He squeezed it and determined that it must be little chunks of drugs in plastic bags. The court affirmed the pat-down search stating:

> the possibility of a surprise attack at close quarters
> with even a small knife presents danger sufficient to
> justify an officer in taking reasonable protective
> measures, and such a precautionary squeeze is well within
> the scope of Terry.

209 F.3d at 1158.

None of the above-cited cases is factually on point in all

respects with the case at bar.  But, on the whole, we believe the case law supports a finding that the officers were justified in conducting a pat-down search of defendant after they saw what looked like a knife in defendant's back pocket.  A knife like the one possessed by defendant is a dangerous weapon whether or not it is illegal under Kansas law.  The knife in this case was particularly threatening because it could be opened in a split second.  Such a knife observed during a <u>Terry</u> stop justifies an officer taking reasonable protective measures.  Those measures include patting down a detainee to determine whether that person has other weapons.  The fact that the stop occurred in a high crime area known for drugs, gang activity and violence adds to the reasonableness of the protective action taken by the officers.  On the basis of the facts of this case and the above-described case law, the court shall reject defendant's argument that the pat-down search was illegal.

<u>Fruit of the illegal search</u>

The court does not believe that the pat-down search of defendant was illegal in this case.  However, even if it was, the evidence of defendant's identity should not be suppressed as fruit of an illegal search.  There is no claim or evidence in this case that defendant was stopped or frisked for the ultimate purpose of obtaining defendant's identification or fingerprint information.  Defendant was stopped as part of an effort to make contact with

people in the neighborhood to obtain information about and to suppress gang activity.  He was arrested because he was reasonably considered to be armed and dangerous, and the pat-down search to protect the officers produced evidence supporting criminal charges. Evidence of defendant's identity and his immigration status was obtained as part of the normal procedures for learning such information after an arrest.  As such, it should not be subject to the exclusionary rule.  See U.S. v. Olivares-Rangel, 458 F.3d 1104, 1113-16 (10th Cir. 2006).

Conclusion

Defendant's motion to suppress is denied.

**IT IS SO ORDERED.**

Dated this 26th day of July, 2007 at Topeka, Kansas.

s/Richard D. Rogers
United States District Judge